Voto particular disidente emitido por la
Juez Asociada Se-ñora Rodríguez Rodríguez,
al que se une la Jueza Aso-ciada Señora Fiol Matta.
Comparecen la Universidad de Puerto Rico, el Dr. José R. de la Torre, Presidente de la Universidad de Puerto Rico, y la Dra. Ana Guadalupe Quiñones, Rectora Interina del recinto de Río Piedras, mediante un recurso de certifi-cación intrajurisdiccional, en el cual solicitan la revocación de la orden de injunction preliminar emitida el 28 de abril de 2010 por el Tribunal de Primera Instancia a través del Hon. José Negrón Fernández, juez. Mediante este dicta-men, el foro primario ordenó al Presidente de la Universi-dad de Puerto Rico (Universidad) y a la Rectora del recinto riopiedrense a “no poner en vigor el receso académico y administrativo indefinido que la Rectora decretó el 21 de abril de 2010 ... [y] abrir el Recinto en o antes del 3 de mayo de 2010 a las 6:00 de la mañana”. Apéndice, pág. 17.
Mediante el recurso presentado por los peticionarios, és-tos alegan que la orden recurrida “interviene indebida-mente con la discreción de la U.P.R. para atajar conducta violenta, ilegal y violatoria de las normas disciplinarias del Recinto como la que comenzó el pasado 21 de abril de 2010 y mediante la cual se le ha privado a la Universidad del control sobre éste”.(1) También se alega que “[p]rohibir que la Rectora decrete un receso de tipo académico y adminis-trativo ante situaciones reales de violencia que afectan a *863 funcionarios del Recinto y a sus estudiantes es una deter-minación injustificada y, más aún, contraria a la autono-mía universitaria”. (Enfasis omitido.)(2) Por último, nos so-licitan que declaremos que “en Puerto Rico la libertad de expresión no incluye el derecho de tomar el control de una institución pública ni el de llevar a cabo actos violentos en ese sentido”. (3)
Al examinar objetiva y desapasionadamente la orden de injunction preliminar emitida por la sala de instancia, no obstante, se puede colegir que ésta no tiene el nefasto al-cance que los peticionarios alegan. En esta orden, el foro de instancia realizó una exposición adecuada de la doctrina de libertad de expresión y asociación en el contexto escolar y universitario, y además, aplicó las disposiciones pertinen-tes del Reglamento General de la Universidad de Puerto Rico, Reglamento Núm. 6479, 16 de febrero de 2002, según enmendado hasta el 19 de mayo de 2004 (Reglamento). En específico, la sala de instancia indicó que la Sec. 32.4.10 del Art. 32 del Reglamento, pág. 45, establece, en síntesis, que el rector de cada unidad del sistema podrá suspender las actividades extracurriculares en la Universidad, cuando exista peligro claro e inminente de que estas actividades puedan resultar en la interrupción, obstaculización o per-turbación sustancial y material de las tareas regulares del centro docente. La citada sección establece, igualmente, que esta suspensión debe decretarse mediante una resolu-ción escrita fundamentada emitida por el rector. Además, la suspensión decretada deberá ser temporal, y no exten-derse por un período mayor a treinta días, salvo que la Junta de Síndicos lo apruebe.
Al analizar los hechos que tenía ante su consideración, el foro de instancia determinó —correctamente— que el receso académico decretado es equiparable a una suspen-sión de los derechos de libertad de expresión y asociación y, *864 que en este caso, la rectora Dra. Ana Guadalupe no cum-plió con las exigencias que establece el Reglamento. El re-ceso académico decretado por la Rectora se realizó a través de una sucinta carta circular, en la cual se describen unos incidentes de violencia acaecidos durante la mañana de 21 de abril de 2010, por los cuales entendió que no había otra alternativa que el cierre académico y administrativo. La Rectora no emitió ese día la resolución fundamentada re-querida por el Reglamento, ni lo hizo en los tres días si-guientes al decreto del receso. Tampoco se justificó ante el foro de instancia las razones para no cumplir con este re-quisito reglamentario.
A pesar de que los peticionarios alegan que la carta cir-cula es el mecanismo que ordinariamente se utiliza para comunicar a la comunidad universitaria toda decisión ad-ministrativa de la Rectora, esta carta dista mucho de las resoluciones que se han emitido en el pasado en situacio-nes similares. Las resoluciones anteriores incluyen —con-trario a la carta circular de este caso— un resumen deta-llado de los actos que llevan al Rector a tomar tal decisión y la base reglamentaria que le permite realizar este decreto.(4)
Por otro lado, el receso decretado por la Rectora fue in-definido, en clara contravención con el carácter temporal que exige el Reglamento, el cual no ha de ser por un pe-ríodo mayor a treinta días, salvo autorización de la Junta de Síndicos. Acoger la interpretación de los peticionarios de que “sin importar la manera en que se denomine el receso decretado, éste perderá su efectividad al transcurrir el pe-ríodo de treinta (30) días” sería darle carta blanca a la administración universitaria para cumplir con sus regla- *865 mentos cuando lo entiendan pertinente, dejando de lado la reglamentación adoptada por la propia Universidad. Re-curso de certificación intrajurisdiccional, pág. 23.
Por lo tanto, no tienen razón los peticionarios al exponer que la orden del Tribunal de Primera Instancia le prohíbe a la administración universitaria atajar —mediante el me-canismo del receso académico— situaciones de violencia que se susciten en cada una de las unidades del sistema, en pos de preservar el orden y la paz institucional. Al con-trario, la orden emitida presume la validez de la facultad de cada uno de los rectores de suspender las actividades extracurriculares —lo que tiene el efecto de restringir el derecho a la libertad de expresión y asociación— en situa-ciones en las cuales exista un peligro claro e inminente de perturbar las tareas regulares del centro docente. No obs-tante, esta restricción debe realizarse conforme al Regla-mento que la propia Universidad adoptó para regular las mencionadas circunstancias excepcionales. Después de todo, la Universidad no está exenta de la norma de derecho administrativo que establece que toda instrumentalidad o agencia gubernamental está obligada a seguir fielmente sus propios reglamentos. García Cabán v. U.P.R., 120 D.P.R. 167, 175 (1987).
Tampoco la orden emitida por la sala de instancia valida —como corolario de su derecho a la libertad de expresión— las actuaciones de los estudiantes al apostarse en los por-tones del Recinto, como alegan los peticionarios en su recurso. Esa no fue la controversia presentada ante el foro de instancia ni resuelta por éste mediante la concesión del injunction impugnado. La única controversia que adjudicó el foro primario era la validez de la actuación de la Rectora del recinto de Río Piedras, al decretar un receso académico indefinido en este centro docente y ordenar su cierre. Como vimos, asumiendo que la Rectora cuenta con tal facultad, el foro de instancia determinó que esta actuación fixe invá-lida, por no cumplirse con la reglamentación aplicable.
*866 Siendo así, considero que la decisión del tribunal de ins-tancia realizó un balance adecuado de los intereses en juego y concedió correctamente el injunction preliminar, puesto que la Universidad no siguió el proceso debido al decretar el receso académico. Se nos dificulta entender por qué aún no se ha subsanado esa deficiencia procesal.
Ante tal escenario procedía expedir el recurso de injunction, pues los estudiantes sufren un daño irreparable al restringírsele ilegalmente su derecho a la libertad de ex-presión y asociación, y no existe otro remedio adecuado en ley para atender esta violación. No podemos perder de vista que los derechos de la libertad de expresión y asocia-ción gozan de primacía en nuestro ordenamiento y no de-ben restringirse injustificadamente, sin cumplirse con las salvaguardas procesales que podrían validar esta actuación. En ese tenor, vale la pena citar lo siguiente:
Cuando el derecho de mayor preeminencia, el de expresión, se ve tan erosionado en pocos meses, en un solo término del Tribunal, la aprehensión turba el espíritu del creyente más firme en un gobierno de ley. Esperamos que el Tribunal Supremo de Puerto Rico no pierda de vista que la mejor manera de salva-guardar el orden en las universidades y en las escuelas públi-cas es sosteniendo el mandato constitucional: libre expresión para todos. Libre, sin prohibiciones absolutas. (Enfasis en original.) R.L. Martínez Torres, La primera enmienda se va de la Universidad de Puerto Rico: restricciones absolutas a los derechos de expresión, 52 (Núms. 3-4) Rev. Jur. U.P.R. 665, 696 (1983).
Aun cuando soy del criterio de que este recurso es de gran interés público, proveería “no ha lugar” por conside-rar fundamentalmente correcta la decisión del Tribunal de Primera Instancia. Por las razones expresadas, disiento respetuosamente de la determinación que hoy anuncia la mayoría.

 Recurso de certificación intrajurisdiccional, pág. 12.

 íd., pág. 14.

 íd., pág. 29.

 Véase, e.g., la Resolución emitida por el Rector Antonio Miró Montilla el 17 de septiembre de 1981 incluida como apéndice en R.L. Martínez Torres, La primera enmienda se va de la Universidad de Puerto Rico: restricciones absolutas a los dere-chos de expresión, 52 (Núms. 3-4) Rev. Jur. U.RR. 665 (1983).